Citation Nr: 1508824 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 04-38 698 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to an increased rating for dermatitis of the hands, currently rated 10 percent. 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

S. J. Janec, Counsel


INTRODUCTION

The Veteran served on active duty from July 1989 to April 1993. 

This matter is before the Board of Veterans' Appeals (the Board) on appeal of a June 2004 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan. 

In a December 1993 rating decision, the RO awarded the Veteran service connection for sycosis barbae and dermatitis of the palms of the hands, and assigned 0 percent rating.

The Veteran filed a claim seeking increased ratings for the service-connected skin disabilities in January 2004. The RO increased the rating both of the skin disability ratings from 0 percent to 10 percent in a June 2004 rating decision. The Veteran disagreed with the assigned ratings, and perfected an appeal as to both issues.

In a December 2007 decision, the Board continued the 10 percent ratings assigned to the service-connected sycosis barbae and dermatitis. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims. While the matter was pending before the Court, in January 2009, the Veteran's attorney and a representative of VA's Office of General Counsel filed a Joint Motion for Remand. In the Joint Motion, the parties indicated that a remand was necessary to satisfy VA's duty to notify. In a February 2009 Order, the Court vacated the Board's December 2007 decision and remanded the case.

In June 2009, the Board remanded the Veteran's skin disability claims so that the Veteran could be provided adequate notice. Subsequently, in October 2010, the Board remanded the Veteran's claims so that the Veteran could be scheduled for a VA skin examination. While it appears that the Veteran reported for a skin examination at some point following the Board's October 2010 remand, a formal examination report was not incorporated into the record. The Board remanded the Veteran's appeal again in March 2012 so that the report of that examination could be associated with the folder, and so that another VA skin examination could be scheduled. In September 2012, the Veteran was provided a new VA skin examination. However, the report was incomplete. In December 2012, the Board remanded the claims again so that the report of the 2010 examination could be associated with the folder, and so that another VA skin examination could be scheduled. A record in the claims file indicates the Veteran did not report to a scheduled May 2013 VA skin examination. The Board remanded the claim again so that the 2010 report could be obtained and the Veteran could be scheduled for an additional examination.

In January 2014, the Board granted a 30 percent rating for pseudofolliculitis barbae and remanded the issue of entitlement to an increased rating for dermatitis of the hands, and the issue of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities. The case has now been returned to the Board for appellate review. 


FINDINGS OF FACT

1. The Veteran's dermatitis of the hands does not affect 20 percent or more of his entire body or exposed areas affected; and has not required corticosteroids or other immunosuppressive drugs for six months or more during a 12-month period.

2. The most probative evidence demonstrates that the Veteran's service-connected disabilities are not shown to be of such severity so as to preclude substantially gainful employment.




CONCLUSIONS OF LAW

1. The criteria for a rating higher than 10 percent for dermatitis of the hands have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R. § 4.130, Diagnostic Code 7806 (2008).38 C.F.R. § 3.159, 4.1, 4.7 (2014). 

2. The criteria for the assignment of a total disability rating based on individual unemployability due to service-connected disabilities have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.159, 3.340, 3.341, 4.1, 4.14, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R. § 3.159 (2014); Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from a notice error. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). 

The Board finds that any defect with regard to the timing or content of the notice is harmless because of the thorough and informative notices provided throughout the adjudication and because the Veteran had a meaningful opportunity to participate effectively in the processing of the claim with an adjudication of the claim by the RO subsequent to receipt of the required notice, including most recently in a October 2014 supplemental statement of the case. The record does not show prejudice to the Veteran, and the Board finds that any defect in the timing or content of the notices has not affected the fairness of the adjudication. Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Specifically, the Veteran was provided appropriate notice subsequent to the rating decisions, including in letters dated in July 2009 and June 2013, with an adjudication of the claims by the RO subsequent to receipt of the required notice. The record does not show prejudice to the appellant, and the Board finds that any defect in the timing or content of the notices has not affected the fairness of the adjudication. Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained. The appellant has not referred to any additional, unobtained, relevant, available evidence. VA has obtained several examinations with respect to the claims on appeal that include the information necessary to rate the Veteran's disability relevant to the rating criteria. Nieves-Rodriguez v. Peake, 22 Vet App 295 (2008). Accordingly, the Board finds that VA has satisfied the duty to assist, and no further notice or assistance to the appellant is required to fulfill VA's duty to assist in the development of the claim. Stegall v. West, 11 Vet. App. 268 (1998); Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Increased Rating

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2014). The Schedule is primarily a guide in the rating of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2014). 

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2014). Consideration of the whole recorded history is necessary so that a rating may accurately compensate the elements of disability present. 38 C.F.R. § 4.2 (2014); Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board must consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31 (1999). 

Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). However, consideration must be given as to whether staged ratings should be assigned to compensate entitlement to a higher rating at any point during the pendency of the claim. When the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is undertaken with consideration of the possibility that different ratings may be warranted for different time periods for the disability at issue. 

Where there is a question as to which of two ratings is to be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). 

The probative value of a physician's statement is dependent, in part, upon the extent to which it includes clinical data or other rationale to support the opinion. Bloom v. West, 12 Vet. App. 185 (1999). After careful consideration of the evidence, any reasonable doubt remaining should be resolved in favor of the veteran. 38 C.F.R. §§ 3.102, 4.3 (2014). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996). 

Under the criteria effective from August 30, 2002, dermatitis is rated under Diagnostic Code 7806, which provides that a 10 percent rating is warranted for dermatitis or eczema that involves at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is warranted for involvement of 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12-month period. More than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period warrants a 60 percent rating. 38 C.F.R. § 4.118, Diagnostic Code 7806 (2008).

The regulations were revised in October 2008. The October 2008 revisions, however, are pertinent to Diagnostic Codes 7800 through 7805, not Diagnostic Code 7806, and for claims for benefits received by VA on or after October 23, 2008. The Veteran's claim was received in 2004. A claimant may request consideration under the amended criteria, but that has not happened in this case. See 73 Fed. Reg. 54708 (September 23, 2008). 

The Veteran's dermatitis of the hands is currently rated 10 percent disabling under Diagnostic Code 7806. To obtain a 30 percent under Diagnostic Code 7806, the evidence would have to show that 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas are affected; or; that systemic therapy such as corticosteroids or other immunosuppressive drugs are required for a total duration of six weeks or more, but not constantly, during the past 12-month period. 

During the Veteran's February 2004 VA examination, he displayed a palmar and finger web space rash on the left palm and in-between the fingers constituting 0.8 percent of the Veteran's total body area or 8 percent of his exposed skin. The examiner also noted a "patchy rash of red scaling skin on his left hand" which constituted 0.2 percent of the Veteran's total body surface area or 2 percent of exposed skin. Systemic therapy was not required. 

On VA examination in July 2007, the Veteran had contact dermatitis of the elbows and left leg, xerosis of the other leg, and acanthosis negricans of the hands. 

A VA examination report from an October 2010 evaluation could not be located in the file or in the Veteran's electronic records. 

On VA examination in September 2012, it was noted that the Veteran's dermatitis was under control and the Veteran did not have any current treatment. Clinical evaluation showed that it affected 0 percent of his total body area and 0 percent of exposed areas. 

On VA examination in August 2013, the clinician noted that the Veteran did not have any systemic manifestations such as fever, weight loss, or hypoproteinemia associated with the skin disorder. He was noted to have eczema on the hands, arms, thighs, and knees. He was treated with topical terbinafine cream on a near-constant basis and 12 percent ammonium lactate cream. His eczema was noted to affect between 5 percent and less than 20 percent of the exposed body area. It would only impact his ability to work if his job required frequent contact with skin irritants. 

On VA examination in March 2014, the examiner concluded that the Veteran's dermatitis looked like dry skin. There was no active rash, scaling, or oozing. Systemic therapy was not required and he did not have any systemic manifestations. He was treated with topical cream on a near-constant basis. It affected about 3 percent of his total body area and about 1 percent of the exposed area. It did not impact his ability to work. 

In reviewing the clinical evidence, the Board finds that the Veteran's dermatitis of the hands affects less than 20 percent of the entire body surface area or his exposed skin. That is true even with consideration of other body parts that have at times been noted to be affected by dermatitis or another skin disability, aside from the pseudofolliculitis barbae of the head, face, and neck which is already separately rated 30 percent. Also, there is no indication in the medical records that the Veteran's dermatitis has ever resulted in systemic manifestations or required systemic therapy. Accordingly, the Board concludes that the Veteran's symptoms have not met the criteria for a disability rating above 10 percent at any time during the appeal period. 

In reaching that conclusion, the Board has considered the Veteran's statements regarding the skin disability of the hands, and the medical evidence in his file. The Board finds that he is competent to report symptoms. However, here, the clinical evidence pertaining to the Veteran's dermatitis of the hands is more probative for the purposes of assigning a current rating for the disability at issue in conjunction with the relevant rating criteria, and the Board finds that the symptoms reported have been appropriately considered in assigning the current rating consistent with the documented symptoms. 

Ordinarily, VA's Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. Fisher v. Principi, 4 Vet. App. 57 (1993). An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2014). 

There is a three-step inquiry for determining whether a Veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. Thun v. Peake, 22 Vet App 111 (2008).

The Board finds that the evidence in this case does not show such an exceptional disability picture that the available schedular rating for the service-connected disability is inadequate. The rating criteria reasonably describe the Veteran's disability level and symptomatology due to his service-connected dermatitis of the hands. There is no competent and credible evidence of record that the Veteran has symptoms of this disability that are not considered in the rating criteria. Therefore, referral for consideration of the assignment of an extraschedular rating is not warranted. 

For these reasons, the Board concludes that the preponderance of the evidence is against the claim. Therefore, the claim for a rating in excess of 10 percent for dermatitis of the hands must be denied. 38 U.S.C.A. § 5107(b); Alemany v. Brown, 9 Vet. App. 518 (1996); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Total Disability Rating Based on Individual Unemployability

Total disability ratings for compensation may be assigned where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of a service-connected disabilities: Provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a) (2014). 

Substantially gainful employment is defined as work which is more than marginal and which permits the individual to earn a living wage. Moore v. Derwinski, 1 Vet. App. 356 (1991). To establish a total disability rating based on individual unemployability, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340 (2014). In reaching the determination, the central inquiry is whether the Veteran's service connected disabilities alone are of sufficient severity to produce unemployability. Hatlestad v. Brown, 5 Vet. App. 524 (1993).

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation; provided that permanent total disability shall be taken to exist when the impairment is reasonably certain to continue throughout the life of the disabled person. 38 C.F.R. § 4.15 (2014).

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b) (2014). Rating boards should refer to the Director of the Compensation and Pension Service for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities but who fail to meet the percentage requirements set forth in 38 C.F.R. § 4.16(a) (2014). The Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16(b) (2014). 

In this case, the Veteran is service-connected for pseudofolliculitis barbae rated 30 percent; arthritis of the right knee, rated 10 percent; instability of the right knee, rated 10 percent; arthritis of the left knee, rated 10 percent; instability of the left knee, rated 20 percent, dermatitis of the hands, rated 10 percent and scars of the left knee, rated 0 percent. His combined rating was 40 percent from January 12, 2004; 50 percent from July 29, 2009; and 70 percent from April 1, 2012. Thus, he did not meet the schedular criteria listed in 38 C.F.R. § 4.16(a), prior to April 1, 2012. However, because the skin disabilities may be considered together, he has met the schedular criteria for consideration as of April 1, 2012, of having one disability ratable as 40 percent or more (the combined skin disability rating), with sufficient other service-connected disability for a 70 percent combined service-connected disability rating.

Thus, the question then becomes whether the Veteran's service-connected disabilities preclude him from engaging in substantially gainful employment, work which is more than marginal that permits the individual to earn a "living wage" consistent with his education and occupational experience. Moore v. Derwinski, 1 Vet. App. 356 (1991). The sole fact that a claimant is unemployed, is employed only part-time, or has difficulty obtaining employment, is not enough. A rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the appellant is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

The Board finds that the most probative evidence of record does not establish that the Veteran is precluded from substantially gainful employment, consistent with his education and occupational experience, as a result of service-connected disabilities alone. On VA examination in March 2014, the examiner stated that the Veteran was capable of substantially gainful sedentary employment. Notably, his left-sided weakness that required the use of a cane or a motorized scooter resulted from a stroke in 2007, which is a non-service connected disability. 

In view of the foregoing, to the extent that his service-connected disabilities cause occupational impairment, the Board finds that the Veteran was appropriately compensated by the 40 percent, 50 percent, and 70 percent combined ratings in effect during the appeal period; and his situation does not present such an exceptional or unusual disability picture as to warrant entitlement to a total disability rating based on individual unemployability due to service-connected disabilities pursuant to 38 C.F.R. § 4.16(b). The Board is aware of the Veteran's contentions that he cannot work due to service-connected disabilities. The Board notes that the Veteran is competent to provide information concerning factual matters of which he has firsthand knowledge. Barr v. Nicholson, 21 Vet. App. 303 (2007); Washington v. Nicholson, 19 Vet. App. 362 (2005). Under certain circumstances, lay statements may serve to support a claim for VA benefits. However, the Board finds that the most probative, competent clinical evidence of record shows that the Veteran's service-connected disabilities do not prevent him from performing employment outweigh his assertions. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). The most recent VA examiner found that the Veteran was capable of sedentary work.

For the reasons stated above, the Board concludes that the preponderance of the evidence is against the claim for a total disability rating based on individual unemployability due to service-connected disabilities, and the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to an increased rating for dermatitis of the hands is denied.

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities is denied. 



____________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs